JUDGE FRANK MONTALVO

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

FILED
2009 JUN 25 PM 2:57
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| | | |
|---|---|---|
| **TRACY J. CHAVEZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION** |
| | § | **NO.** |
| **ERIC K. SHINSEKI, SECRETARY OF** | § | |
| **VETERANS AFFAIRS, DEPARTMENT** | § | |
| **OF VETERANS AFFAIRS** | § | |
| **Defendant.** | § | |

<u>**COMPLAINT**</u> **EP09CV0241**

### <u>*Introduction*</u>

1.      This is a complaint for damages, declaratory and injunctive relief authorized and instituted

pursuant to the Rehabilitation Act of 1973, as amended, 29 U.S.C. 701 et seq., and the Rehabilitation

Act Amendments of 1992, Pub. L. No. 102-59 (Oct. 29, 1992) ("Rehabilitation Act").

2.      This lawsuit is brought to prevent Defendant, ERIC K. SHINSEKI, SECRETARY OF

VETERANS AFFAIRS, DEPARTMENT OF VETERANS AFFAIRS, pursuant to the Rehabilitation

Act of 1973, as amended, 29 U.S.C. 701 et seq., and the Rehabilitation Act Amendments of 1992,

Pub. L. No. 102-59 (Oct. 29, 1992) ("Rehabilitation Act"), from maintaining a policy, practice,

custom or usage of discriminating against, Plaintiff, TRACY CHAVEZ, in regard to terms,

conditions and privileges of employment, and for damages, back pay and other equitable relief for

Plaintiff, TRACY CHAVEZ, who has been discriminated and retaliated against by Defendant on the

basis of disability and reprisal (for EEO activity).  TRACY CHAVEZ also brings an action for

hostile work environment.

### <u>*Jury Demand*</u>

3.      A jury is hereby demanded.



### *Jurisdiction and Venue*

4.      This action is brought for a declaratory judgment, injunctive relief and compensatory damages, pursuant to 42 U.S.C. Section 1983, 20 U.S.C. Sections 1681-1688, 28 U.S.C. Sections 2201 and 2202, and the Rehabilitation Act. This Court has jurisdiction to hear the Plaintiff's claims pursuant to 28 U.S.C. Sections 1331, 1343(3) and (4) 1337, and the Rehabilitation Act.

5.      Venue is proper in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. Section 1391(b) as El Paso County, Texas is the county where the Defendant operates the Department of Veterans Affairs (El Paso VA Health Care System) Plaintiff's employer.

### *Parties*

6.      **TRACY CHAVEZ** is a citizen of the United States and a resident of the City of El Paso, El Paso County, Texas.

7.      Plaintiff is employed by the Defendant, **ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS, DEPARTMENT OF VETERANS AFFAIRS**. The Defendant maintains and administers records relevant to its employment practices. Service of process may be made upon the United States Attorney for the Western District of Texas, and the United States Attorney General, Department of Justice, by registered or certified mail, pursuant to the Federal Rules of Civil Procedure (Rules 4(I)(1)(A), (B) & (C)).

8.      Defendant is an employer within the meaning of the Rehabilitation Act.

9.      Plaintiff, at the time of her complaint, was employed as Medical Record Coder, GS-7, at the El Paso VA (OPC) outpatient Clinic because of her disability and reprisal she was subjected to harassment, which created a hostile work environment.

### *Exhaustion of Remedies*

10.     Plaintiff filed a formal complaint of discrimination.  Such filing was within at least 45 days

of the last act of which she complained. Plaintiff's formal complaint alleged denial of Plaintiff's rights, by Defendant, pursuant to the Rehabilitation Act. Specifically, Plaintiff, TRACY CHAVEZ alleges that he was discriminated against and subjected to a hostile work environment because of disability and reprisal (for EEO activity).

11.     All conditions precedent to the filing of the lawsuit has been met.

### *Factual Allegations*

12.     On October 9, 2007, the Complainant was assigned the duties of conducting fee billing audits and all fee scrubbing duties.

13.     From February 22 through March 7, 2008, management, Patricia Landis, assigned the complainant duties that required "more critical thinking and retrieving progress notes on the vested patient's report." In addition, Ms. Landis assigned the complainant the duties of "evaluation and management code."

14.     On or about November 13, 2007, the complainant received a "fully satisfactory" rating on her annual performance evaluation.

15.     On October 23, 2007, management Ms. Landis issued the complainant a letter of written counseling.

16.     On March 31, 2008, management Ms. Landis issued complainant a written counseling regarding her performance and conduct.

17.     On October 30, 2007, the complainant was told by management Elizabeth Tovar in an open forum meeting that she was creating a hostile work environment by being disrespectful to her supervisor Patricia Landis.

18.     On October 23, 2007, management Ms. Landis verbally harassed the complainant when she stated: I better not be saying derogatory statements about her Ms. Landis; I had to ask for permission

to go to employee health or to a doctor's appointment, I could not just say I have an appointment for ...: I could not perform EEO or union business during work hours, instead to take care of that during my lunch or break."

19.    On October 30, 2007, the complainant informed management Ms. Tovar that someone had deliberately poured an oily substance on her keyboard.  Ms. Tovar responded by stating "get over it... let it go... your keyboard was replaced;" Ms. Tovar threatened the complainant of a charge of insubordination; Ms. Tovar stated to the complainant "maybe it was time for me (complainant) to started looking for another job."

20.    On October 3, 2007, management, Patricia Landis continued to "slight," and ignore the complainant while praising the other coworkers for their contributions.

21.    On September 7, 2007, management Ms. Landis informed the complainant that her one hour of overtime that she worked on September 6, 2007, had been denied. She also precluded the complainant from leaving one hour early instead of being paid the one hour of overtime or provide her one hour of compensatory time.

22.    On July 27, 2007, management Ms. Landis called the complainant into her office and warned her not to come into her office unannounced and if she had issues, she was told not to go to her supervisor but to consult with the union.

23.    On July 26, 2007, the complainant tried to speak with management Ms. Landis regarding tension over a bill coding and Ms. Landis told her to go and "speak to anyone else but not her."

24.    In July, 2007, management Ms. Landis required the complainant to change a coding entry on a patient's bill even though the initial coding was correct.

25.    Management Ms. Landis turned the lights off on the complainant knowing full well that the complainant was still in the room working.

26.     On or about September 6, 2007, management Ms. Landis denied the complainant's request to work eight hours of overtime on a Saturday.

27.     On December 27, 2007, management Ms. Landis proposed to reassign the complainant to another area and/or supervisor.

28.     On or about February 13, 2008, the complainant requested that management Ms. Landis provide the "math formula used on the productivity spreadsheet" however, Ms. Landis failed to provide the formula until February 21, 2008; the complainant alleged that management Ms. Landis was inferring that she wanted to shoot her with a pistol when she Ms. Landis sent her an e-mail with a "puppy smoking a cigarette and shooting a pistol"; and, the complainant alleged that management Ms. Landis became upset with her when she sent an e-mail to the Director of the El Paso VA asking a question concerning a coding issue.

29.     On February 14, 2008, management Ms. Landis told the complainant during a staff meeting that she should speak for herself and not speak for the group if she had a concern.

30.     On March 3, 2008, management Ms. Tovar told maintenance workers to hang "memo boards" for employees however, Ms. Tovar informed maintenance not to hang a memo board in the complainant's area because "she had to get some work done this morning."

31.     On March 3, 2008 and March 5, 2008, the complainant alleged that management Ms. Tovar treated her differently then her coworkers whom she Ms. Tovar had lunch with.

32.     On March 10, 2008, management Ms. Landis precluded and/or denied the complainant's request for an external audit of her productivity after Ms. Landis accused her of having low productivity.

33.     On March 10, 2008, management Ms. Landis had a meeting with the complainant concerning her request for an external audit, during the meeting Ms. Landis became angry, defensive, and/or

yelled at the complainant.

34.     On March 12, 2008, management Ms. Landis failed to provide the complainant a monetary performance award as verbally promised.

35.     On March 12, 2008, management Ms. Landis accused the complainant of being absence without leave; management Ms. Tovar attempted to preclude the complainant from a meeting she had with the Chief of IRM, consequently the complainant was left with no alternative than to request a VA police escort in order to attend her meeting; and, management denied the complainants request for an audit of her computer.

36.     On or about March 13, 2008, management Ms. Landis held a meeting with the complainant whereby she Ms. Landis slammed her office door and "angrily raised her voice."

37.     On March 13 and 31, 2008, management Ms. Landis acted in an unprofessional manner when she slammed office doors because she was angry.

38.     On March 31, 2008, management Ms. Landis verbally told the complainant that her request for sick leave had been approved however, when the complainant checked the leave system Ms. Landis had not approved the requested leave.

39.     In March 2008, management Ms. Landis falsely accused the complainant of telling her coworkers that she (complainant) does not like Ms. Landis.

40.     In March 2008, management Ms. Landis told the complainant not to come into her office unannounced however, when the complainant tries to contact Ms. Landis by telephone Ms. Landis refuses to answer the telephone.

41.     On April 2, 2008, the complainant received written notification that management was going to conduct an Administrative Board of Investigation (ABI) concerning an allegation regarding the complainant's conduct.

42.     On April 1, 2008, management Ms. Tovar informed the complainant that she was being placed on administrative absence pending an ABI. Subsequently, the complainant was told to clear all of her personal belongings from her work area and was then escorted to her car by a security officer.

43.     On March 27, 2008, management Ms. Landis verbally counseled the complainant concerning low work productivity. Additionally, Ms. Landis denied the complainant's request for a printer, her request for assistance in printing progress notes and her request for an external audit.

## COUNT ONE
### DISABILITY DISCRIMINATION/FAILURE TO ACCOMADATE

44.     Plaintiff realleges paragraphs 1-43 as if fully set forth herein.

45.     The actions of Defendant, constituted disability discrimination against **TRACY CHAVEZ** in the creation and condonation of a disability (physical) bias and a hostile work atmosphere which changed the terms and conditions of his employment.

46.     The unlawful employment practices in violation of the Rehabilitation Act herein complained of occurred in the course of Plaintiff's employment with Defendant were carried on by Defendant's agents, servants, and employees and committed because of Plaintiff's physical disability.

47.     Defendant discriminated against Plaintiff herein because of her disability with respect to the terms, conditions, privileges, advantages and benefits of her employment with Defendant. Specifically, Plaintiff was harassed, held to stricter standards of performance, and denied benefits of employment accorded other employees.

48.     In addition, Plaintiff was treated dissimilarly from other employees.

49.     By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings heretofore and is therefore entitled to attorney's fees pursuant to the

Rehabilitation Act and under the General Equity Powers of the Court.

## COUNT TWO
### REPRISAL/RETALIATION

50.     The Plaintiff, **TRACY CHAVEZ** realleges paragraphs 1 – 49 as if fully set forth herein.

51.     Defendant retaliated against Plaintiff, **TRACY CHAVEZ** herein since it engaged in reprisal

and retaliation in violation of the Rehabilitation Act.  Specifically, Plaintiff, **TRACY CHAVEZ**

suffered adverse employment consequences as a direct result of his participation or assistance in an

EEOC process.  As a direct and proximate result of these actions, Plaintiff, **TRACY CHAVEZ**

suffered retaliation and reprisal.

52.     By reason of the Defendant's actions, Plaintiff, **TRACY CHAVEZ** found it necessary to

retain the services of an attorney in these proceedings and heretofore and is therefore entitled to

attorney's fees pursuant to the Rehabilitation Act, and under the general equity Powers of the Court.

## COUNT THREE
### HOSTILE WORK ENVIRONMENT

53.     Plaintiff realleges paragraphs 1-52 as if fully set forth herein.

54.     The actions of **Defendant**, constituted a hostile work environment against **Plaintiff, TRACY**

**CHAVEZ** in the creation and condonation of a hostile work atmosphere which changed the terms

and conditions of his employment.

55.     The unlawful employment practices in violation of the Civil Rights Act herein complained

of, occurred in the course of Plaintiff's employment with Defendant, were carried on by Defendant's

agents, servants, and employees and committed because of Plaintiff's disability made the work

environment one that a reasonable person could not endure without injury.

56.     Defendant discriminated and retaliated against Plaintiff herein as a disabled person with

respect to the terms, conditions, privileges, advantages and benefits of his employment with Defendant. Specifically, Plaintiff was harassed, held to stricter standards of performance, and denied benefits of employment accorded other employees.

57.     In addition, Plaintiff was treated dissimilarly from other employees.

58.     By reason of the Defendant's actions, the Plaintiff found it necessary to retain the services of an attorney in these proceedings heretofore and is therefore entitled to attorney's fees pursuant to the Rehabilitation Act, and under the General Equity Powers of the Court.

WHEREFORE, Plaintiff respectfully requests:

a.      A declaratory judgment, declaring Defendant's acts, through the acts of its agents, employees and successors, herein complained of to be in violation of the Rehabilitation Act.

b.      Compensatory damages against the Defendant for each violation of Plaintiff's rights, as protected by the Rehabilitation Act and for her pain, suffering, emotional distress, humiliation and for any resulting physical and emotional disabilities, in the amount of $300,000.00;

c.      Attorney's fees, court costs, prejudgment and post judgment interest as provided by law including the Rehabilitation Act; and

d.      Such other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

**The Law Office of Enrique Lopez**


By:_____
ENRIQUE LOPEZ
State Bar No.: 12563630
701 N. St. Vrain Street
El Paso, Texas 79902
Telephone: (915) 351-0595
Facsimile:  (915) 534-7207

**Attorney for Plaintiff**